OPINION OF THE COURT
Bruce M. Kaplan, J.
For those who sojourn in the palace of sorrows that is the New York State Family Court there are many sources of sadness. Few are more pervasive and endemic than the quantum of persons who repeatedly are charged with recidivism or unameliorated neglectful behavior.
The case load of the court has grown at a dizzying rate. While a certain amount of that growth can be ascribed to more effective reporting, far more cases are generated by the acceleration of the dysfunctional nature of our society.
The statistics are stupefying. Filings in Family Court rose from 107,000 petitions in 1984 to a projected 235,000 in 1997. A substantial number of these are child protective cases, and a significant number of these cases involve persons previously known to the court.
There are three common permutations which occasion the need for the protection of additional children.
The most common variant is recidivism where a person repeats the self-same behavior which led to an earlier finding, and places at risk an after-born child. One such example would be where a person who was found neglectful because of cocaine abuse subsequently gives birth to another child who has a positive toxicology for cocaine.
In the second variant an after-born child is found to be at risk because the neglectful parent has failed to ameliorate the circumstances that led to the initial neglect finding. An example would be a person who was found guilty of child sexual abuse and refused to acknowledge that he or she had a problem, or who had begun a rehabilitative program but had yet to complete it.
The third occurs where placement is inexplicably permitted to lapse, and a new proceeding must be brought in order to obtain jurisdiction over the child. (Matter of Susan F., 59 AD2d 783 [2d Dept 1977].)
In the face of this ever-burgeoning case load it becomes all the more important to conserve overburdened judicial resources. One particularly appropriate and effective technique is the use of accelerated judgment in child protective proceedings.
*684 The use of summary judgment in child protective proceedings has received the imprimatur of the Court of Appeals.
In Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M. (83 NY2d 178), the Court noted that: "When properly employed, moreover, summary judgment is a highly useful device for expediting the just disposition of a legal dispute for all parties and conserving already overburdened judicial resources. As such, we see no reason why summary judgment is not an appropriate procedure in proceedings under Family Court Act article 10.” (Supra, at 182.) It went on to note that: "The establishment of appellant’s sexual abuse of Nicholas constituted admissible proof of his neglect of Michael (Family Ct Act § 1046 [a] [i]). This shifted the burden to appellant to submit admissible evidence to create a triable issue regarding neglect of Michael; appellant’s unexcused failure to do so justified Family Court in granting summary judgment on the petition involving Michael (Zuckerman v City of New York, 49 NY2d 557, 562).” (Supra, at 183.)
In James M. (supra) the motion for summary judgment contained a certificate of conviction for 15 acts of sodomy along with the indictment as well as the sentencing minutes. Its holding is not restricted to its particular facts which charged sexual abuse.
Lucille S. (hereinafter respondent) is a member of the group alluded to earlier. She previously appeared in Family Court on December 5, 1995 when a neglect petition was filed against her. She was found neglectful of her child Caress on November 7, 1996, and after a dispositional hearing on January 16, 1997 Caress was placed with Administration for Children’s Services (ACS).
On February 26, 1997 Baby Girl S. (Baby Girl) was born. On March 4, 1997 a neglect petition was filed alleging that she was a neglected child because there was an imminent risk to her health as a result of respondent’s failure to take her prescribed medication.
At the court’s direction the instant summary judgment motion was brought with respect to Baby Girl.
Respondent Failed to Raise Any Triable Issue of Fact
Respondent’s counsel submitted an affirmation in opposition which in conclusory terms claimed that summary judgment should not be granted because there existed at least three triable issues of fact.
*685 This affirmation fails to establish any triable issue of fact. In Zuckerman v City of New York (49 NY2d 557), the Court of Appeals reversed the Appellate Division, and granted summary judgment where the only paper submitted in opposition to defendant’s summary judgment motion was the bare affirmation of the plaintiffs attorney which demonstrated no personal knowledge of the facts and was found to be without evidentiary value and unavailing. The Court noted that opposition to a motion for summary judgment must produce evidentiary proof in admissible form, and that "mere conclusions, expressions of hope or unsubstantiated allegations are insufficient”. (49 NY2d, at 562.)
A reading of the affirmation in opposition submitted herein places it on all fours with the type of affirmation found unavailing in Zuckerman (supra). Accordingly, there are no triable issues of fact. (Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., supra; Matter of Jimmy A., 218 AD2d 734 [2d Dept 1995].)
The question which must be considered is the oft-recurring one of whether respondent’s conduct and circumstances which previously caused her to be found neglectful are proof of the neglect of Baby Girl pursuant to Family Court Act § 1046 (a) (i). This is a function of whether the pertinent circumstances are sufficiently proximate in time to bottom a finding of neglect with respect to this after-born child.
A number of cases have set forth a time frame so remote as to preclude utilization of the former finding as proof of neglect of the child’s sibling.
We begin by first considering what point of departure should be utilized in determining whether a time frame is too remote.
Respondent claims that the appropriate yardstick for determining whether proof of prior neglect should be utilized as evidence in a proceeding involving an after-born child is the time when the conduct previously found to constitute neglect occurred. That contention is erroneous.
Matter of Cruz (121 AD2d 901 [1st Dept 1986]) involved the reversal of Family Court’s dismissal of a neglect petition. Family Court had determined that the prior finding of neglect was stale. The Appellate Division made a finding of neglect and remitted for a dispositional hearing.
The Court noted that the initial offending conduct occurred on June 6, 1985, the neglect finding was made on June 19, 1985, and the mental health report entered into evidence at *686 the dispositional hearing held in January 1986 opined that the respondent had significantly impaired judgment in caring for her children. It held that these circumstances established a prima facie case that neglect of Priscilla who was born August 9, 1985 was likely to take place.
The Court further stated that based on these proximate circumstances being shown a neglect finding should have been entered.
In Matter of Brian W. (199 AD2d 1021 [4th Dept 1993], appeal dismissed 83 NY2d 952), the Court underscored the importance of ascertaining necessary and relevant facts including a current evaluation of respondent, and evidence bearing on respondent’s postcommencement conduct before a disposition was made.
It was for those reasons it remitted this case, which involved a finding of child sexual abuse, for a dispositional hearing that addressed those considerations.
In Matter of Commissioner of Social Servs. of City of N. Y. (Trudy I.) v Leona W. (192 AD2d 602 [2d Dept 1993]), the neglectful conduct occurred in January 1992, the respondent admitted neglect in August 1992, and the Court released the children to their mother’s custody at the dispositional hearing in December of 1992.
The Appellate Division reversed the dispositional order and noted that the child’s best interest is the paramount concern at a dispositional hearing, and the relevant inquiry involves .the parent’s capacity to properly supervise the child based on current information. Implicit in this holding is the recognition that the calculation of whether conduct is proximate in time necessarily subsumes a respondent’s condition at the time of disposition.
In Matter of Valerie Leonise T. (107 AD2d 327 [1st Dept 1985]), Family Court released a child to her mother at a dispositional hearing held in September 1984 following an admission to excessive corporal punishment in December 1983. The petition was based on events that happened in June 1983. The Appellate Division reversed this decision. It noted that among the errors committed by the Family Court was a failure to give sufficient consideration to opinions offered at the dispositional hearing regarding the risk of substantial future abuse. The Court underscored that the paramount concern should be the best interests and welfare of the child necessitating that there be taken into account the potential threat to the child’s health and safety.
*687 These cases demonstrate that in ascertaining whether evidence of prior abuse or neglect is so proximate in time as to be dispositive with respect to an after-born child, one considers not only when the events that gave rise to the earlier neglect findings occurred, but also the conditions and circumstances of a respondent at the time of the dispositional hearing.
A respondent’s circumstances and conditions at the time of the dispositional hearing are probative as to whether the after-born child would be at risk if returned. Therefore, in ascertaining whether the prior finding is top remote in time, one looks not only to the time when the conduct occurred but the respondent’s condition and circumstances at the time of the disposition.
Dispositional hearings are controlled by Family Court Act § 1052. This section requires that at a dispositional hearing the court speak to the question of whether removal from a child’s home is in the child’s best interest, whether reasonable efforts were made to make it possible for the child to return home, and where such efforts were not made that the lack of such efforts was appropriate under the circumstances.
In order to fulfill this statutory obligation it is vital that a respondent’s current condition and circumstances be thoroughly examined. The concerns articulated in Cruz, Brian W., Trudy I. and Valerie Leonise T. (supra) were earlier articulated in Matter of Urdianyk (27 AD2d 122 [4th Dept 1967]).
In Matter of T. C. (128 Misc 2d 156 [Fam Ct, NY County 1985]), the court noted that where the gravamen of neglect of one child pursuant to Family Court Act § 1046 (a) (i) is proof of the abuse or neglect of another, neglect could not be proved if the allegations were stale. They would have to relate to continuing conduct or behavior patterns. It struck neglect allegations based on conduct which had occurred then nine and six years previously.
It collected the cases dealing with remoteness and cited Matter of Daniel C. (47 AD2d 160 [1st Dept 1975]), which held that conduct more than two years old at the time of the filing of a neglect petition standing alone would not be proof of neglect under Family Court Act § 1046 (a) (i).
Subsequent thereto, the Second Department decided Matter of Jeremy H. (193 AD2d 799 [2d Dept 1993]). In that case the Court held that evidence of the abuse of Jeremy’s half sister in 1986 was sufficient to support a finding in a 1990 abuse petition where the respondent was obdurate in his refusal to ac *688 knowledge his proven past conduct, and therefore had failed to take essential steps in correcting the condition that led to the earlier finding.
The Court found that it could reasonably conclude that this condition not only existed but also that the respondent had the burden of proving otherwise and he had failed to do so.*
This holding is consistent with those cases which require that postpetition conduct and circumstances at the time of a dispositional hearing are relevant to determine whether the new petition is sufficiently proximate in time.
It is true that Matter of Cruz (supra) referred to the determinative factor being whether the conduct which forms the basis for a finding is proximate in time. This is an infelicity of language because the Court had noted that there must be taken into consideration not only the nature of the conduct but any other pertinent considerations. Since respondent’s circumstances and condition at the time of the dispositional hearing is subsumed within the rubric of pertinent considerations the measuring line encompasses respondent’s conditions and circumstances at the time of disposition.
Summary Judgment is Granted Adjudging that Respondent Neglected Baby Girl S.
The position of ACS can be summarized as follows: (1) respondent neglected Caress; (2) respondent’s condition and circumstances on January 16, 1997 which included her refusal to take prescribed medication resulted in Caress being placed with ACS for up to one year; and (3) respondent’s neglect of Caress constitutes proof of her neglect of Baby Girl.
As noted earlier Family Court Act § 1046 (a) (i) provides that evidence of neglect of one child can be evidence of neglect of another. Less than six weeks prior to the birth of Baby Girl S. a dispositional hearing was held with respect to her sister Caress. At that hearing respondent testified that although her treating physician had prescribed two psychotropic medications in February of 1996 she had declined to take them believing that compliance was not mandatory, and that she had reservations about taking them.
Respondent’s considered decision not to take prescribed medication precluded her attaining a state of stability and *689 unimpaired judgment that would be vital before the infant could be returned to her without there being an imminent risk to her health. It is this failure to comply with a medication protocol as recently as January of 1997 that necessitated Caress’ placement.
A respondent can suffer from impaired mental functioning even if it fails to rise to the level of a mental illness defined in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Diseases (4th ed). The failure to take prescribed medication for such a condition results in a parent’s inability to care for a child. (Matter of Alena O., 220 AD2d 358 [1st Dept 1995]; Matter of Madeline R., 214 AD2d 445 [1st Dept 1995]; Matter of Nassau County Dept. of Social Servs. [Raul B.] v Diane B., 231 AD2d 523 [2d Dept 1996]; Matter of Jesse DD., 223 AD2d 929 [3d Dept 1996]; Matter of Naticia O., 195 AD2d 616 [3d Dept 1993].)
Respondent’s condition and circumstances on January 16, 1997 is evidence of the neglect of Baby Girl. Accordingly, this court finds that the motion for summary judgment should be granted and that Baby Girl is a neglected child.
An investigation and report as well as a BMHS is ordered.

 Conversely it is error to make a finding of neglect where a mental condition has been properly diagnosed and successfully treated. (Matter of H. Children, 156 AD2d 520 [2d Dept 1989].)